## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CCPS TRANSPORTATION, LLC, and )
ENBRIDGE PIPELINES (FSP), L.L.C., )
                            )
                            )
             Plaintiffs, )
                            )
v.                            )       **Case No. 12-2602-CM**
                            )
BYRON SLOAN and TERRY SLOAN, )
                            )
                            )
            Defendants. )
                            )

## MEMORANDUM AND ORDER

        Plaintiff Enbridge Pipelines (FSP) L.L.C. ("Enbridge") wants to build a pipeline on defendants Byron and Terry Sloan's land.  Plaintiff CCPS Transportation, LLC ("CCPS"), already operates a pipeline on defendants' land and is the successor-in-interest to Sinclair Pipe Line Company ("Sinclair").  CCPS granted Enbridge a partial assignment of the right to construct a new pipeline, based on a 1951 easement granted by defendants' predecessor to Sinclair.  Plaintiffs ask the court for declaratory judgment in their favor, as well as injunctive relief and damages for breach of contract.

        The case is before the court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 48); Defendants' Motion for Summary Judgment (Doc. 54); and defendants' Motion to Certify Questions to the Kansas Supreme Court (Doc. 64).  Plaintiffs seek summary judgment on their declaratory judgment claim.  Defendants claim that they are entitled to summary judgment because (1) plaintiffs' request is premature; (2) plaintiffs have not yet satisfied a condition precedent—payment; (3) the stated consideration is inadequate to support construction of additional pipelines; (4) plaintiffs' right to enforce has lapsed; (5) enforcement is barred based on the doctrines of laches and/or waiver; and (6)

enforcement would be unconscionable. Alternatively, defendants ask the court to certify questions to the Kansas Supreme Court for resolution.

## I.    Factual Background

On August 4, 1951, Cora E. Huss executed a written Right of Way agreement with Sinclair. In this agreement, Ms. Huss gave Sinclair and its successors and assigns an easement across her land. Specifically, for consideration of $63.00, Ms. Huss granted Sinclair and its successors and assigns the following rights:

> to lay, maintain, inspect, operate, protect, repair, replace and remove a pipe line for the transportation of liquids and/or gases, on, over and through [defendants' land] together with the right of unimpaired access to said pipe line and the right of ingress and egress on, over and through said land for any and all purposes necessary and incident to the exercise by said grantee of the rights granted hereunder.
>
> . . . .
>
> As a part of the consideration hereinabove set forth Grantors hereby grant unto said Grantee the right at any time or times to construct and operate an additional pipe line or lines alongside of said first pipe line on, over and through said land, and Grantee agrees to pay Grantors for each additional pipe line so placed the sum of Sixty-three Dollars, on or before the time Grantee commences to construct such pipe line on the land hereinabove described. . . .

(Doc. 49-1 at 1.)   Recorded in Allen County, Kansas, the agreement provides that payment may be made directly to the grantors or deposited in the Stark State Bank of Stark, Kansas. The Stark State Bank, however, no longer exists.

As previously noted, CCPS, as Sinclair's successor-in-interest, granted Enbridge a partial assignment of its rights under the Right of Way. Defendants purchased the property with full knowledge of the easement and its terms.

In 1951, the property governed by the agreement was one parcel. The property was later subdivided, but both parcels remain within the area covered by the Right of Way. A one-room schoolhouse sits on part of the subdivided property. Defendants have made a number of improvements

to the schoolhouse over the years and are concerned that plaintiffs will impact the schoolhouse with an additional pipeline. At the time Ms. Huss executed the Right of Way, the portion of the property containing the schoolhouse was leased to the Osage Valley School District.

The existing pipeline has been on the property since 1953. Other owners of the property (between Ms. Huss and defendants) entered into an oil and gas lease with Reese Exploration, Inc., in 1980. That document is also on file in Allen County.

In 2012, Enbridge contacted defendants to discuss construction of a new pipeline. Defendants denied that Enbridge had the right to construct another pipeline and denied access to the land for preconstruction surveys.

Plaintiffs contend that the Right of Way governs the entire forty-acre plot of defendants' land, although they do not claim any right to damage or destroy the one-room schoolhouse. The proposed route of the pipeline runs parallel to the existing pipeline through defendants' property.

Enbridge has not yet made any payment to defendants for construction of the additional pipeline. In 1951 and 1953, the average price per acre of defendants' land was $63.00. As of 2013, the average price per acre is $2,000.00. For other portions of Enbridge's proposed pipeline, Enbridge offers or pays $3,500 for farm land in Allen County, Kansas.

## II.    Certification to Kansas Supreme Court

The court first takes up defendants' motion for certification, where defendants ask the court to certify three questions to the Kansas Supreme Court:

1.  Is the Right of Way on file in Book M51 at Page 107 at the Register of Deeds Office, Allen County, Kansas enforceable to allow plaintiffs to construct additional pipelines on defendants' forty-acre tract of land in Allen County, Kansas?

2.  If the Right of Way agreement is enforceable for additional pipelines on defendants' property, does the easement created burden the entire forty-acre estate?

3. Should the order of specific performance be granted against defendants, requiring defendants to provide plaintiffs with the land for pipeline construction based upon the 1951 Right of Way agreement referenced above?

(Doc. 64 at 1.)

Kan. Stat. Ann. § 60-3201 authorizes the Kansas Supreme Court to rule on questions of law certified to it by a federal court. Certification is appropriate if (1) the question(s) of law may be determinative to the cause and (2) there is a lack of controlling Kansas law regarding the question(s). Kan. Stat. Ann. § 60-3201; *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). The decision to certify is within the sound discretion of the court. *Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005) (quotation omitted). But "'[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.'" *Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996) (quoting *Armijo*, 843 F.2d 406). Federal courts should decide questions of state law when necessary to render a judgment, unless there exists "some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred." *Copier*, 138 F.3d at 838 (quoting *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943)). "Certification is never compelled, even when there is no state law governing an issue." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1364 (10th Cir. 1999) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974)).

**A. Is there controlling Kansas law regarding the following legal questions?**

**1. Is the Right of Way on file in Book M51 at Page 107 at the Register of Deeds Office, Allen County, Kansas enforceable to allow plaintiffs to construct additional pipelines on defendants' forty-acre tract of land in Allen County, Kansas?**

This question is one of interpretation of the scope of the easement. Kansas has ample case law surrounding questions of easement interpretation. The important legal question is not whether this

particular easement has been interpreted under Kansas law, but rather, whether there is controlling law to direct this court how to interpret an easement of this kind.

Kansas law provides, "Courts determine the character and extent of each parties' rights under the easement by examining the language of the grant and the extent of the dominant tenant's use of the easement at the time it was granted." *Brown v. ConocoPhillips Pipeline Co.*, 47 P.3d 1269, 1274 (Kan. Ct. App. 2012) (citing *S. Star Cent. Gas Pipeline, Inc. v. Cunning*, 157 P.3d 1120 (Kan. Ct. App. 2007)). Generally, if a written instrument has clear language and can be carried out as written, rules of construction are unnecessary. *See City of Ark. City v. Bruton*, 166 P.3d 992, 1001–02 (Kan. 2007) (citing *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999)). These guiding principles represent controlling law from which the court can determine whether the easement is enforceable. Defendants, in fact, cite a number of Kansas cases in support of their position. The court declines to certify this question to the Kansas Supreme Court.

**2. If the Right of Way agreement is enforceable for additional pipelines on defendants' property, does the easement created burden the entire forty-acre estate?**

Again, this question is rooted in controlling Kansas law. There is Kansas case law to guide this court in determining whether the easement is a blanket easement and, if so, the extent of the easement and the significance of its "blanket easement" label. This, much like the previous question, is an easement interpretation question concerning the geographical and spatial scope of the easement.

The case law cited above is instructive in interpreting the scope of the easement. On multiple occasions, Kansas courts have answered questions about blanket easements. They have even done so in similar factual contexts. Because there is not a lack of controlling Kansas law regarding this question, the court denies the request to certify it to the Kansas Supreme Court.

**3. Should the order of specific performance be granted against defendants, requiring defendants to provide plaintiffs with the land for pipeline construction based upon the 1951 Right of Way agreement referenced above?**

This question, again, is one of easement/contract interpretation. And again, controlling Kansas law exists.

"Whether equity will decree the specific performance of a contract rests in sound judicial discretion and always depends on the specific facts of the case." *Wilcox v. Wyandotte World-Wide, Inc.*, 493 P.2d 251, 256 (Kan. 1972). The question presented is not novel. Defendants have only presented one argument why the Kansas Supreme Court should answer this question instead of the district court: to provide a more timely and final decision process. This public policy argument is addressed below. But Kansas case law addresses specific performance in contracts and also directs courts how to balance equitable principles. *See S. Star Cent. Gas Pipeline, Inc.*, 157 P.3d at 1126–28. There is not a lack of controlling law surrounding this question. Certification to the Kansas Supreme Court, therefore, is not warranted.

**B. Is there a sufficient public policy rationale for the Kansas Supreme Court to certify any of the questions?**

As mentioned above, certification requires not only a question of unsettled law, but also a public policy rationale. *See Copier*, 138 F.3d at 838; *Armijo*, 843 F.2d at 407. Defendants' request for certification also fails on this basis.

**1. Time/efficiency/finality of having the Supreme Court of Kansas certify a question.**

Defendants contend that certifying these questions to the Kansas Supreme Court will offer the most efficient and economical use of judicial resources. Defendants also argue that the Kansas Supreme Court will answer these questions with increased finality.

"Certification allows a federal court faced with a novel state-law question to put the question directly to the State's highest court and has the advantages of reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response from the state court." *Kan. Judicial*

*Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997)).

Certifying this question to the Kansas Supreme Court would probably save time and provide increased finality. But this alone has not traditionally been enough to warrant certification to the state supreme court. The general certification rule set forth by the Tenth Circuit expresses a need for public policy considerations in addition to a lack of controlling law. Judicial economy, specifically in a case where controlling law exists, is not an adequate public policy consideration. Increased finality and efficiency are not sufficient considerations in themselves to warrant certification; if they were, the "purpose of the jurisdictional act (diversity jurisdiction, 28 U.S.C. § 1332) would be thwarted," *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943), as it would allow all difficult questions to be certified to the state supreme court.

**2. Defendants argue that if the court grants this easement, it could burden thousands of other acres of land and many other landowners. Is this sufficient public policy consideration for certification?**

The possibility of burdening thousands of additional acres of land is a strong public policy consideration. But plaintiffs are only seeking to enforce the rights to an easement concerning a forty-acre tract of land. Should plaintiffs seek to enforce an easement on other land, the question can be examined at that time. Each one of these easements is a contract in its own right, subject to interpretation by the courts. Defendants' judicial economy argument is insufficient to warrant certification to the Kansas Supreme Court.

For all of these reasons, the court denies defendants' request for certification of questions to the Kansas Supreme Court.

**III. Legal Standards for Summary Judgment**

The court now turns to the standards for summary judgment. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In the factual recitation above, the court combined the facts proposed by both parties, including only those that are relevant, material, and properly supported by the record.

## IV.  Discussion

### A.  Is the easement ambiguous?

According to defendants, plaintiffs have suggested that the easement gives them the right to construct pipelines on the entire forty acres owned by defendants.[1] Defendants make alternative claims about the language of the easement: the court must either construe the easement as one that has been limited by its usage over time or find the easement ambiguous. In supporting these arguments, defendants contend that the easement is an undefined "blanket easement" and focus on the word "alongside."

The court construes an easement's language as a matter of law. *See Spears v. Kan. City Power & Light Co.*, 455 P.2d 496, 501 (Kan. 1969) (citation omitted). In interpreting an easement, the court attempts to "ascertain the intention of the parties and to give effect to that intention if it can be done consistent with legal principles." *Mid-America Pipeline Co. v. Lario Enters., Inc.*, 942 F.2d 1519, 1525 (10th Cir. 1991) (quoting *Garvey Ctr., Inc. v. Food Specialties, Inc.*, 519 P.2d 646, 650 (Kan. 1974) (additional quotation marks and citation omitted)). Reasonable interpretations are preferred to

---

[1] Defendants offered variations of this statement as uncontroverted facts 17 and 25. Plaintiffs did not controvert these facts. Despite this suggestion, however, plaintiffs do not intend to use the entire forty acres. The proposed position of the new pipeline is, indeed, close to and parallel with the existing pipeline.

unreasonable interpretations. *Id.* And the court seeks to avoid results that "vitiate the purpose" or "reduce the terms of the contract to an absurdity." *Id.* (citations omitted).

The easement in this case is known as a "blanket easement." A blanket easement is one that is created without specific dimensions. *Brown*, 271 P.3d at 1274–75; *S. Star Cent. Gas Pipeline, Inc.*, 157 P.3d at 1125; *Potter v. N. Natural Gas Co.*, 441 P.2d 802, 806 (1968). In determining the scope of a blanket easement, courts consider the reasonable or necessary use of the easement. *Aladdin Petrol. Corp. v. Gold Crown Props. Inc.*, 561 P.2d 818, 822 (Kan. 1977); *see also S. Star Cent. Gas Pipeline, Inc.*, 157 P.3d at 1125.

"Ambiguity is found only when words used to express the meaning and intention of the parties are insufficient in that the contract may be understood to reach two or more possible meanings." *Mid-Am. Pipeline Co.*, 942 F.2d at 1526 (citing *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 754 P.2d 803, 806 (Kan. 1988)). Whether an ambiguity exists is question of law. *Id.* (citing *Kennedy & Mitchell, Inc.*, 754 P.2d at 805–06).

As previously noted, in deciding the character and extent of the parties' rights under an easement, the court looks to (1) the language of the easement and (2) the extent of the dominant tenant's use of the easement when it was formed. *Brown*, 271 P.3d at 1274 (citing *S. Star Cent. Gas Pipeline, Inc.*, 157 P.3d 1120); *Potter*, 441 P.2d at 805 (citation omitted). It is the second portion of this test that defendants focus on. Defendants contend that this language limits the size and extent of the easement to "the amount of land reasonably necessary for the operation and use of the pipeline currently in place." (Doc. 54 at 10.) But to hold that the size of the easement was set with finality at the time of the grant would ignore the plain language of the easement that grants plaintiffs the right to construct additional pipelines at later dates. This would defeat the intent of the parties. The court

determines that the second part of the test relates to the general character and direction of the easement, as opposed to the precise dimensions of the easement.

Courts have repeatedly found easements with multiple line rights enforceable. *See, e.g., Vandiver v. Transcontinental Gas Pipe Line Corp.*, 222 F. Supp. 731, 733–34 (M.D. Ga. 1963); *N. Natural Gas Co. v. Knop*, 524 N.W.2d 668, 671 (Iowa Ct. App. 1994); *Tex. E. Transmission Corp. v. Carman*, 314 S.W.2d 684, 687 (Ky. Ct. App. 1958); *Hamilton v. Transcon. Gas Pipe Line Corp.*, 110 So. 2d 612, 614–15 (Miss. 1959); *Crawford v. Tenn. Gas Trans. Co.*, 250 S.W.2d 237, 241 (Texas Civ. App. 1952). *But see Belusko v. Phillips Petrol. Co.*, 308 F.2d 832, 834–35 (7th Cir. 1962); *Winslow v. City of Vallejo*, 84 P. 191, 192–93 (Cal. 1906); *Tenn. Pub. Serv. Co. v. Price*, 65 S.W.2d 879, 881–82 (Tenn. Ct. App. 1932); *Harrington v. Magellan Pipeline Co.*, No 10-09-00131-CV, 2011 WL 6225276, at *2 (Tex. Ct. App. Dec. 14, 2011); *Enbridge Energy, Ltd. P'ship v. Engelking*, No. 2012AP1188, 2013 WL 898231, at *3 (Wis. Ct. App. Mar. 12, 2013). Here, the parties specifically contemplated that plaintiffs might eventually construct additional pipelines. The Right of Way addresses that right unambiguously. But, by using the terminology "alongside of said first pipe line," the contract also contemplates that any subsequent pipelines will be built in a limited area—not wherever plaintiffs please within the forty acres. The court agrees with the statement of the Wisconsin Court of Appeals in another recent case involving Enbridge:

> When the location of a right-of-way easement is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended and the right cannot be exercised over the whole of the land. . . . Furthermore, any interpretation that the right-of-way encompassed the entire parcel would be unreasonable. If it covered the entire 20 acres, there would have been no need to grant Enbridge "the right of ingress and egress to and from [the] right of way through an over [the entire parcel]." Further, such an interpretation would essentially deprive the Englekings of their property.

*Enbridge Energy, Ltd. P'Ship*, 2013 WL 898231, at *3 (internal quotation marks and citation omitted). To hold that plaintiffs can build a pipeline in any place and direction on the land would essentially read

the words "alongside of said first pipe line" out of the contract. Webster's Third New International Dictionary defines "alongside of" as "side by side with: parallel to." (3d ed. 1986). The language is not ambiguous, but it limits where additional pipelines may be placed. To the extent that plaintiffs seek declaratory judgment that they may use the whole of defendants' land to construct additional pipelines, they are not entitled to such a declaration.

## B. Is the easement otherwise valid and enforceable?

Defendants raise a number of arguments why the easement is not otherwise valid or enforceable. The court now turns to each of these arguments, although as indicated below, a few of them overlap in analysis.

### 1. Is plaintiffs' request premature?

Defendants contend that the easement is not enforceable because plaintiffs have not given the court any concrete specifics about the pipeline Enbridge wants to construct. Because Enbridge's plans are only "proposed," the court cannot know exactly where Enbridge intends to construct the pipeline and whether it will comply with the language of the easement—specifically, that Enbridge will construct the pipeline "alongside of said first pipe line," bury it to an appropriate depth, and avoid encroaching on the schoolhouse property.

On one hand, there is some appeal to defendants' argument. This court only has jurisdiction over cases and controversies. It is possible that, if Enbridge were to propose a particular location for the pipeline (i.e., in a very close proximity to the existing pipeline, running parallel to it and not encroaching on the schoolhouse property, and buried appropriately), defendants would not object at all—although it is also possible that defendants would still object to the amount of compensation. In that instance, there would be a more limited or nonexistent controversy.

On the other hand, plaintiffs are attempting to take steps to utilize the easement. Defendants have challenged the enforceability of the Right of Way on multiple grounds. One of their arguments is that plaintiffs have lost the right to build any additional pipelines at all. Another argument is that, if plaintiffs may build additional pipelines, they should pay fair market price for the right instead of the amount agreed to in 1951. The only reasonable next step is for plaintiffs to make payment and begin construction on the property. The court hesitates to require plaintiffs to possibly infringe on defendants' rights before recognizing that the case is ripe for adjudication. *See In re Schugg*, No. 05-2045-PHX-JAT, 2012 WL 1906527, at *6 (D. Ariz. May 25, 2012) ("The ripeness doctrine does not require a party to possibly infringe on another's rights before an actual case or controversy exists.") (citations omitted).

While the court believes that the parties might be more likely to reach an amicable resolution of this case if plaintiffs' pipeline plans were closer to being finalized, such finalization is unnecessary to present a justiciable controversy to the court. Plaintiffs' request is not premature.

### 2. Is payment a condition precedent?

Defendants contend that Enbridge may not enforce its rights under the Right of Way before satisfying the condition precedent of payment. A condition precedent is "something that is agreed upon which must happen or be performed before a right can accrue to the main contract." *M. West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 843 (Kan. Ct. App. 2010) (citation and internal quotation marks omitted). But with the easement, plaintiffs secured a vested interest in the land. *See Caruthers v. Peoples Natural Gas Co.*, 38 A.2d 713, 715 (Pa. 1944) ("The question is whether the provision in the agreement of 1906 that $3 per rod 'shall be paid the grantors before entry on premises is made to lay the first or additional line' is a condition precedent to the grant or whether it merely stipulates the time, viz., in advance, when payment is to be made. We think it is the latter."); *see also Traywick v.*

*Transcon. Gas Pipe Line Corp.*, 170 So. 2d 802, 807–08 (Ala. 1965) ("Our view is that appellee, upon receiving the right of way agreements, acquired a vested interest in appellant's land with the right to lay a pipe line in and across said land, and with the right also to lay, from time to time, additional pipe lines across it; that the provision for payment of $1 per lineal rod within 60 days after completion of any additional line was not a condition of the granting of the easement but simply fixed the time for making payment; and that appellee's failure to pay said additional sum has not rendered inoperative the grant of either easement and is not ground for cancelling either right of way agreement."). The easement merely provides for the timing of payment—"on or before" initiating construction. Plaintiffs have not yet began construction, so plaintiffs' obligation to pay has not yet arisen.

### 3. Is there adequate consideration?

Defendants next argue that the agreement for construction of additional pipelines is not supported by adequate consideration. They acknowledge that consideration supports the agreement to construct the first pipeline (for $63). (*See* Doc. 60 at 17 ("Defendants are not contending that the payment of $63.00 to Cora Huss in 1951 was inadequate to allow the construction of the original pipeline.").) But defendants deny that sufficient consideration supports the grant of "an eternal right to construct pipelines on the entirety of the 40 acres." (*Id.*) They further deny that the agreed-upon payment of $63 for an additional pipeline—built over sixty years later—is adequate consideration. (*Id.*)

A contract must be supported by adequate consideration to be enforceable. *State ex rel. Ludwick v. Bryant*, 697 P.2d 858, 861 (Kan. 1985) (citation omitted); *see generally Bank of Am., N.A. v. Narula*, 261 P.3d 898, 908–09 (Kan. 2011). In Kansas, the existence of consideration is presumed in a written contract unless the party seeking to invalidate the contract proves lack of consideration by substantial competent evidence. *State ex rel. Ludwick*, 697 P.2d at 861 (citations omitted); *see also*

*Cimarron Feeders v. Bolle*, 17 P.3d 957, 963 (Kan. 2001). *But see Shelden v. Bright*, 10 P.2d 831, 833 (Kan. 1932) (declining to apply the presumptive consideration rule when the writing attempted to state consideration of $1). If, however, the named consideration is "obviously inadequate," the court may deny the relief sought. *Sinclair Prairie Oil Co. v. Worcester*, 183 P.2d 947, 954–55 (Kan. 1947). In fact, the court should deny relief if the result is obviously unjust. *Id.*

Defendants argue that the $63 payment was only the cost to construct one pipeline. The provision in the Right of Way for the right to construct additional pipelines refers to the same consideration given for the right to build the first pipeline. In other words, plaintiffs gave consideration for the right to build one pipeline. There also is a consideration provision governing the construction of additional pipelines. But, according to defendants, there was not separate consideration for the <u>right</u> to build additional pipelines (regardless of whether that right is ever exercised).

Defendants misconstrue the contractual language. Here, the easement is written. It also explicitly states that it was executed for consideration. The consideration for additional pipelines is to be paid on or before construction is initiated. The original $63 was consideration for both the original pipeline, as well as the right to build additional pipelines. Defendants have not met their burden of showing by substantial competent evidence that consideration was lacking.

Defendants have also not shown as a matter of law that $63 is inadequate consideration for each additional pipeline. While it is now clear that $63 is well below market value per acre, at the time the contract was formed, $63 was a reasonable price per acre, according to defendants' own affidavit. And plaintiffs did not actually purchase the land itself—they purchased the right to use a portion of it to construct pipelines. Defendants have offered the court no evidence from which the court can determine that the price per acre is an accurate comparative value. The contract is not invalid for inadequate consideration.

### 4. Has plaintiffs' right to enforce lapsed?

Defendants ask the court to grant them relief from the contract because plaintiffs have let their rights go dormant. In response, plaintiffs cite a number of out-of-state cases suggesting that a lapse of time does not render an easement ineffective. *See, e.g.*, *Sorrell v. Tenn. Gas Transmission Co.*, 314 S.W.2d 193, 196 (Ky. Ct. App. 1958) ("Many types of easements which are granted in perpetuity are not exercised immediately, or within any limited time; yet it has never been suggested that the non-use of the rights granted, either in whole or in part, affects their validity."); *see also Williams v. Humble Pipe Line Co.*, 417 S.W.2d 453, 455 (Tex. Civ. App. 1967) ("[T]he right to lay an additional pipe line is not a mere equitable right but a grant of an expansible easement presently vesting in the grantee an interest in land"). A number of non-binding cases have also held that the mere passage of time is insufficient to prevent the construction of additional pipelines. *See N. Natural Gas Co.*, 524 N.W.2d at 671 (allowing additional pipeline to be built in 1994 based on easements taken in 1930 and 1949); *Strauch v. Coastal States Crude Gathering Co.*, 424 S.W.2d 677, 683 (Tex. Civ. App. 1968); *see also Nw. Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 646 P.2d 422, 424 (Idaho 1982); *Caruthers*, 38 A.2d at 715.

Defendants cite two Kansas cases in support of their position that it is too late to enforce the easement: *Audo v. Western Coal & Mining Co.*, 162 P. 344 (Kan. 1917), and *Jensen v. Southwestern States Management Co.*, 629 P.2d 752 (Kan. Ct. App. 1981). *Audo* is not directly on point, as it considered an option contract as opposed to an easement with a vested right. 162 P. at 345. *Jensen*, however, did involve a vested right: one to purchase the surface of 880 acres for $70 or $75 per acre. 629 P.2d at 753. The court ordered an amendment of the price agreed to in the contract based in part on the passage of time. *Id.* at 757. *Jensen* held that fifty-five years was too long to require specific performance of a contract—even for a vested property right. *Id.* at 753–54. A critical component of

this ruling, however, was that the plaintiffs had a prospective purchaser who "could not obtain a commercial loan so long as it appeared of record that 880 acres might be taken from the purchaser upon payment of $70 per acre for part and $75 per acre for the rest." *Id.* at 754. *Jensen* therefore considered the hardship to the plaintiffs. *Frederick v. S. Star Cent. Gas Pipeline, Inc.*, No. 10-1063-JAR, 2013 WL 1947421, at *9 (D. Kan. May 9, 2013).

The Kansas Court of Appeals later distinguished *Jensen* in *Estate of Link v. Wirtz*, 638 P.2d 985, 989 (Kan. Ct. App. 1982). In *Estate of Link*, the court considered a twenty-year lease entered into in 1958 that was renewable for an additional twenty years. *Id.* The court held:

> The economic climate in the 50's, especially after the postwar recovery from the great depression, was such that it would be reasonable to assume that the parties . . . contemplated with certainty that the value of the lease property would increase over the twenty or forty year period. Indeed, there is no evidence which suggests otherwise. The record further reveals that no real hardship or injustice would result from the enforcement of the lease. . . . It is our conclusion that the lease turned out to be merely a bad bargain, and does not rise to the level of unconscionability, the enforcement of which would not result in an uncontemplated hardship or injustice necessitating equitable reformation.

*Id.* The court noted that although the lease was for $200 per year, there was evidence indicating that a fair rental would be $500 or $720 per year. *Id.*

As suggested by the analysis in *Estate of Link*, defendants' "lapse" argument overlaps with their unconscionability argument, which is discussed below. In both arguments, defendants focus on the passage of time and the changing value of land. (*See* Doc. 54 at 12–13, 19–20.) *Jensen* demonstrates that, at least where a party shows hardship, Kansas courts will consider an equity-driven approach. But *Estate of Link* establishes *Jensen*'s boundaries. Defendants have made no showing of hardship here, which distinguishes this case from *Jensen*. They represent that they bought the property for "investment and recreation" and to "build a home for retirement." (Doc. 54 at 13.) They discuss the improvements they have made to the land. (*Id.*) But if plaintiffs are only permitted to construct

additional pipelines "alongside of said first pipe line," defendants' evidence does not establish that they will suffer hardship by enforcement of the lease. There is no basis upon which the court can find that plaintiffs' rights have lapsed.

### 5. Do the doctrines of laches or waiver apply?

Defendants ask the court to apply the doctrine of laches or waiver to deny plaintiffs' request for relief. They contend that plaintiffs' failure to assert their alleged rights earlier deprives plaintiffs of the right to assert those rights now. This is a twist on the "lapse" argument addressed above.

"The doctrine of laches is an equitable device designed to bar stale claims, and courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations." *Stratmann v. Stratmann*, 628 P.2d 1080, 1087 (Kan. Ct. App. 1981) (citation and quotation marks omitted). The elements for laches are: (1) plaintiffs engaged in conduct giving rise to the situation; (2) plaintiffs delayed in asserting their rights; (3) defendants lacked knowledge or notice that plaintiffs would assert their rights; and (3) defendants would be prejudiced or injured if the court grants plaintiffs relief. *Peters v. Weber*, 267 P.2d 481, 484 (Kan. 1954).

"Waiver, in contrast . . . implies that a party has voluntarily and intentionally . . . caused or done some positive act or positive inaction which is inconsistent with the contractual right. Once it has been established that a right has been waived the party possessing the contractual right is precluded from asserting it in a court of law." *United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc.*, 561 P.2d 792, 795 (Kan. 1977) (internal citation omitted).

Plaintiffs have not actively attempted to construct additional pipelines under the easement for about sixty years. They did not indicate that they wanted to construct additional pipelines; have not paid any additional sums of money; and failed to challenge an Oil and Gas Lease placed on the property in 1980 that arguably could interfere with the Right of Way. But by nature of the recorded

Right of Way, defendants had knowledge that plaintiffs might assert their rights. Moreover, the court notes that the easement states that the right may be exercised at "any time or times." (Doc. 49-1 at 1.) And CCPS assigned certain rights to Enbridge, which negates any claim that plaintiffs have done nothing at all since 1953 with respect to the Right of Way. Neither laches nor waiver applies to absolutely bar plaintiffs from asserting their rights. The court denies summary judgment on this issue.

### 6. Is enforcement unconscionable?

Finally, the argument that permeates all of defendants' other arguments is that enforcement of the easement as written would be unconscionable. "[T]he doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 907 (Kan. 1976) (citation omitted). *Wille* lists ten factors that courts examine to evaluate whether a contract is unconscionable:

> The use of p[r]inted [sic] form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position . . . (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods . . . ; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect . . . ; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract . . . ; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate . . . ; and (10) inequality of bargaining or economic power.

549 P.2d at 906–07 (citations omitted).

Generally, time cannot render a contract unconscionable if it was conscionable when entered into. *Estate of Link*, 638 P.2d at 988. Kansas courts have noted, however, that:

> [d]espite the general rule that the trial court will look to the circumstances as they existed at the inception of the contract rather than in the light of subsequent events to determine whether the agreement is conscionable, a court is not powerless in equity to remedy that which it perceives as present unconscionability.

*Estate of Link*, 638 P.2d at 988. Courts may reform contractual provisions where enforcement would be unconscionable. *The Kan. Baptist Convention v. Mesa Operating Ltd. P'Ship*, 864 P.2d 204, 218 (Kan. 1993).

Most of the *Wille* factors do not apply here. The court has little information about the formation of the contract, other than the fact that at the time Ms. Hess signed the Right of Way, she was a 74-year-old widow whose husband had recently died. This information is insufficient to infer that the contract was unconscionable when formed. There is also nothing to suggest that the price per pipeline was unfair or unconscionable at the time the contract was formed. To the contrary, defendants have offered evidence suggesting that the price was consistent with the value of land at the time. And, notably, defendants purchased the property with full knowledge of the easement.

In cases similar to the one at hand, courts have declined to find prices unconscionable based on the passage of time. *See, e.g., Caffrey Farms, Inc. v. Williams Pipe Line Co.*, 739 F.2d 1366, 1368 (8th Cir. 1984) (finding price of $0.50 per rod conscionable); *Kleinheider v. Phillips Pipe Line Co.*, 528 F.2d 837, 842 (8th Cir. 1975) (finding appreciation in land value inadequate to render easement unconscionable); *Nw. Pipeline Co.*, 646 P.2d at 425 (holding that a thirty-year-old payment term of $1.00 per rod was not unconscionable). And, as discussed in the court's analysis of defendants' "lapse" argument, Kansas has required a showing of undue hardship to find a contract unconscionable based on the passage of time and changes in value. *See Estate of Link*, 638 P.2d at 989; *Jensen*, 629 P.2d at 757; *see also Kan. Baptist Convention*, 864 P.2d at 218 ("To enforce the original contract would work a substantial hardship on the plaintiffs and would be unjust."); *Frederick*, 2013 WL

1947421, at *9–10 ("Courts will not relieve a party from a 'bad bargain,' therefore 'undue hardship' must encompass more than loss of value over time.").

At most, the deal that Ms. Huss made with Sinclair was merely a bad bargain. In 1951 and 1953, the average price per acre of defendants' land was $63.00. As of 2013, the average price per acre is $2,000.00. For Enbridge's proposed pipeline, Enbridge offers or pays $3,500 for farm land in Allen County, Kansas. But increase in property value alone is insufficient for the court to find the contract unconscionable. Defendants were aware of the pipeline and Right of Way at the time they purchased the property. Presumably, the value of the easement was reflected in the price defendants paid for the property and its value today. Defendants have not shown that it is unconscionable to enforce the easement as written.

Finally: a word about the schoolhouse. Defendants claim that the property upon which the schoolhouse sits was excluded from the easement because at the time the Right of Way was entered, the schoolhouse was leased to a school district. In 1953, Sinclair filed a plat that showed the schoolhouse and the exclusion of the property upon which the schoolhouse was located. But plaintiffs' representative, John McKay, has testified that Enbridge can "work around" the schoolhouse. Further, plaintiffs have assured the court that they do not intend to harm the schoolhouse in building the pipeline. It appears to the court that a true controversy does not exist over whether the schoolhouse will be harmed, and the court therefore need not issue a ruling on the subject.

## V.     Conclusion

In light of the above rulings, the court determines that declaratory judgment in favor of plaintiffs is appropriate. Defendants are not entitled to judgment on any of their defenses, although plaintiffs are limited to building a pipeline on the land in a position that is "alongside of said first pipe line." Plaintiffs did not, however, specifically request a declaration that they could use the whole of

defendants' land to construct additional pipelines. Declaratory judgment is therefore ordered as follows, adopted in whole from plaintiffs' requested relief:

> 1. For good and valuable consideration, Cora E. Huss and [Sinclair] entered into a Right of Way agreement (the "Easement") on August 4, 1951. The Easement is recorded in Allen, County, Kansas at Book M51, Page 107.

> 2. The Easement is located in the Northwest Quarter of the Northwest Quarter of Section Four (4), Township Twenty-Four (24), Range Twenty-One (21), Allen County, Kansas (the "Property").

> 3. The Easement is valid and enforceable. No document exists that alters, varies, contradicts, annuls, or otherwise changes its terms.

> 4. The Easement is clear and unambiguous and is to be interpreted in accordance with its plain language. The Easement creates presently vested rights.

> 5. The Easement binds the heirs, successors-in-interests, and assigns of Cora Huss and Sinclair. The Easement's terms, conditions and provisions are freely assignable.

> 6. The Easement grants the owner of the dominant tenement the right to lay, maintain, operate, protect, repair, replace and remove a pipeline for transportation of liquids and/or gas.

> 7. The Easement grants the owner of the dominant tenement the right at any time or times to construct and operate an additional pipe line or pipe lines alongside of said first pipe line on, over and through the Property.

(Doc. 49 at 10.)

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 48) is granted.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 54) is denied.

**IT IS FURTHER ORDERED** that defendants' Motion to Certify Questions to the Kansas Supreme Court (Doc. 64) is denied.

Dated this 29th day of July, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**